

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

————————————————

No. 06-11-00218-CR

————————————————

JEREMY CALIN DUVALL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 40041-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

In the early morning hours of July 28, 2010, Jeremy Calin Duvall was driving his car southbound on Gilmer Road in Longview, Gregg County, Texas. Officer Jacob Zimmerman was driving northbound and passed Duvall. Because Duvall was speeding, Zimmerman turned around to pursue Duvall, but did not turn on his emergency lights or siren. Due to Duvall's speed, Zimmerman was unable to catch him. Duvall's vehicle left the roadway and crashed into a tree and a residence. Duvall was not at the scene, but was later arrested and charged with evading arrest in a vehicle. After a jury trial, he was found guilty and sentenced to four years' imprisonment.

On appeal, Duvall contends that the jury erred in convicting him because there is legally insufficient evidence that he knew the officers were attempting to detain him. We reverse the judgment of conviction and render a judgment of acquittal.

I. Factual Background

On the night of July 28, 2010, Duvall invited and transported three people, Billy Hall, Alanna McKinney, and Brianna Leatch to his home. There is testimony that even though the girls were under twenty-one years of age, Duvall served them alcohol and, according to Leatch and McKinney, Duvall was also drinking.[1]

In the early morning hours, Duvall and McKinney left in Duvall's Mustang. At about 4:00 a.m., Duvall was driving in the soutbound lane of Gilmer Road in Longview, Texas. Officer

---

[1]Hall and Duvall denied that Duvall had been drinking, and Duvall denied serving alcohol.

2

Zimmerman was traveling northbound on Gilmer Road, and he clocked Duvall at fifty-one miles per hour in the forty mile-per-hour zone. Zimmerman turned around to pursue Duvall, but did not turn on his overhead lights because the Mustang "had already put a great deal of distance between [the] patrol car and it" and Zimmerman wanted to catch up to it before turning the lights on. McKinney testified that when Duvall saw the police car, Duvall "sped up even more." Zimmerman tried to catch up to Duvall, but "was unable to overtake the vehicle," and therefore never turned on his overhead lights. He saw Duvall turn right onto Helane Street and then saw the taillights fishtailing just before he lost sight of Duvall.

Duvall's car had skidded off the road, hit a tree, and landed against a residence. McKinney testified that she remembered seeing the police car, but she blacked out prior to the accident. Just after the accident, she awoke and Duvall told her to run. As Zimmerman came upon the accident scene, he found McKinney running into the street. Having run away, Duvall was not at the scene. He was later arrested and charged with evading arrest in a vehicle. He pled not guilty. Duvall testified in his own defense, claiming that his car had been stolen that night, and therefore there was no way he could have been driving it at the time of the incident. After a jury trial, he was found guilty and sentenced to four years' imprisonment and fined $4,000.00.

## II.   Sufficiency of the Evidence that Duvall Knew Zimmerman Was Attempting to Detain Him

In his sole point of error, Duvall contends that the jury erred in convicting him because there is legally insufficient evidence he knew the officer was attempting to arrest or detain him.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

To convict him of the charged offense, the State had to prove Duvall, while using a vehicle, intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04 (West Supp. 2011). A defendant's knowledge that a police officer is trying to arrest or detain him or her is an essential element of the offense of evading arrest. *Rodriguez v. State*, 799 S.W.2d 301, 302 (Tex. Crim. App. 1990); *Hobyl v. State*,

4

152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004) ("[T]he accused must know that the person from whom he flees is a peace officer attempting to arrest or detain him."), *pet. dism'd, improvidently granted*, 193 S.W.3d 903 (Tex. Crim. App. 2006). Here, the issue is whether there is sufficient evidence from which the jury could reasonably infer beyond a reasonable doubt that Duvall knew the officer was trying to arrest or detain him.

The facts in *Redwine v. State* are very similar to the present case. Dale Redwine was driving on a county road and he met a police car going the opposite direction. 305 S.W.3d 360, 361 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Believing that Redwine was driving "too near the center of the undivided road," the officers, Hudson and Shoemaker, turned around to follow Redwine, but did not activate their lights or siren. *Id.* at 361–62. A written statement from Redwine was introduced stating that he wanted to "avoid contact" with the deputies because he had a suspended license. Redwine turned onto a dirt driveway. The officers found the truck empty, but shouted "Sheriff!" and after some time, Redwine walked out of the nearby forest, where he was arrested. After a jury trial, Redwine was convicted for evading arrest using a vehicle. *Id.* at 362.

Redwine argued that the police made no show of authority until after he had already exited his vehicle and, therefore, the evidence was legally insufficient to prove he knew, while in his vehicle, that police were attempting to arrest or detain him. *Id.* at 363. The State conceded that the officers did not activate their overhead lights and that there was no show of authority until after

5

he had left his truck,[2] but the State contended that the jury could infer Redwine's knowledge of police pursuit from Redwine's statement that he turned off the main road "to avoid contact" with the officers he had passed earlier.

The court of appeals noted that Redwine's statement that he was trying to avoid contact with the police was not evidence that he was trying to evade arrest. "The gravamen of the offense is the evasion of an arrest, not the evasion of a police officer." *Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986) (citation omitted). The court then focused on whether there was evidence that the police showed some "authority" while Redwine was in the car.

The court likened the testimony regarding the show of authority to the evidentiary sufficiency standards for identification testimony. In that context, courts have consistently held that an uncertain in-court identification of an accused as the perpetrator of a crime, standing alone, is insufficient to support a guilty verdict. Officer Shoemaker's hesitant and admittedly unsure testimony was the only evidence suggesting that Redwine, while in his vehicle, failed to yield to a *possible* show of authority by law enforcement. The court noted that in the absence of other evidence, the jury could not translate Shoemaker's uncertainty into belief beyond a reasonable doubt. *Redwine*, 305 S.W.3d at 368. Based on that reasoning, the court of appeals reversed the

---

[2]In *Redwine*, one officer gave equivocal and uncertain testimony that he turned the lights on as the police car turned onto the dirt driveway. The other officer testified that they chose not to activate the lights because they hoped to conceal their intent to detain Redwine. *Redwine*, 305 S.W.3d at 365. He said, "[W]e never had a chance to get up on [appellant] to activate our lights." *Id.* In opening, the State plainly stated that the officers were not close enough to turn on their lights, and in closing, the State repeated the concession, "And the only reason those lights were never hit was because he had gotten so far ahead of them and almost escaped them." *Id.*

judgment and rendered an acquittal because "no rational trier of fact could have found appellant guilty beyond a reasonable doubt of evading arrest using a vehicle . . . ." *Id.*

Here, Duvall contends that he, like Redwine, was attempting to avoid contact with the officer.[3] The State argues that *Redwine* is distinguishable because there was no indication that Redwine saw the officers slow, stop, or turn around to follow him, whereas in this case, the passenger testified Duvall sped up when he saw Zimmerman's vehicle. The State argues that there is evidence Duvall saw the police officer's brake lights. That evidence from the passenger consisted of answering, "Yes" to the State's question, "You said he saw the officer, and when he saw him, when he saw the officer apply brakes, he sped away; is that right?" The State also points out that Duvall was speeding and there were no other cars on the road at that time.

For a conviction of evading arrest or detention, "it is essential that the defendant knows the peace officer [is] attempting to arrest him." *Jackson*, 718 S.W.2d at 726; *see also Griego v. State*, 345 S.W.3d 742 (Tex. App.—Amarillo 2011, no pet.) (officers, with activated overhead lights and sirens, passed defendant driving the opposite direction, but insufficient evidence he knew show of authority directed at him even though he accelerated and turned onto side street on passing officers).

The intent of this statute is to deter flight from arrest or detention by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects. *Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977). It supports an important public

---

[3]At oral argument, Duvall admitted to both having a motivation to avoid Zimmerman and to being guilty of fleeing.

7

policy—encouraging suspects to yield to a show of authority by law enforcement. *Redwine*, 305 S.W.3d at 362. Proof that an officer in a vehicle is attempting to arrest or detain a person generally consists of the officer displaying authority by the use of overhead/emergency lights and siren. While use of lights and sirens is not the only method for a peace officer to assert the authority of law (pointing to a driver to pull the vehicle over, verbal commands are others), in this instance, there is no evidence or any type of display of authority by the police officer. It is undisputed that Zimmerman did not turn on his overhead lights, activate his siren, or make any show of authority or other indication that he was attempting to detain Duvall. It is also undisputed that Duvall was speeding at the time he met Zimmerman and that he sped up even more upon seeing him. McKinney testified that she and Duvall saw Zimmerman's brake lights, but did not see him turn around. Even if this testimony is construed that Duvall saw the officer's brake lights, that does not supply evidence of a display of authority by the officer or that Duvall knew the officer was not only braking, but intended to turn around, pursue him, and attempt to arrest or detain him. Necessarily, since there was no action taken by the police officer to demonstrate his authority, there is no evidence that Duvall refused to yield to a display or showing of police authority.

Even viewing the facts of this case in the light most favorable to the jury's verdict, we find legally insufficient evidence from which a jury could reasonably infer, beyond a reasonable doubt,

that Duvall knew Zimmerman was attempting to detain him.   Accordingly, we sustain Duvall's point of error, reverse the judgment, and render a judgment of acquittal.


Jack Carter
Justice

Date Submitted:     April 19, 2012
Date Decided:       May 2, 2012

Publish