

# NUMBER 13-18-00459-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STEVEN HAROLD BETTES,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

**On appeal from the 377th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

Appellant Steven Bettes appeals his conviction for a third-degree felony offense of evading arrest with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A). The punishment range for the offense was enhanced due to appellant's three prior felony convictions. *See id.* § 12.42(d) (increasing punishment range to "any term of not more

than 99 years or less than 25 years"). By one issue, Bettes argues there was insufficient evidence to support a finding that he knowingly evaded law enforcement. We affirm.

## I. BACKGROUND

Bettes was indicted for one count of felony driving while intoxicated (Count 1) and one count of evading arrest or detention in a motor vehicle (Count 2). *See id.* §§ 38.04(b)(2)(A), 49.04(a). The State included enhancement allegations that Bettes had previously been convicted of three felonies.[1] Prior to trial, the State abandoned Count 1. Bettes pleaded not guilty to Count 2 and proceeded to trial.

The evidence at trial showed that on December 2, 2016, Deputy Blake Mosziek of the Victoria County Sheriff's Office responded to a 911 call regarding a reckless driver. The caller, later called as a witness at trial, testified that Bettes was driving in an erratic manner, sideswiped a Ford truck, and was driving individuals off of the road. Deputy Mosziek pursued Bettes in a marked patrol unit with his lights and sirens both activated, generally maintaining a distance of approximately four car lengths behind Bettes. There were no vehicles between Bettes and Mosziek's patrol unit. Bettes continued to drive at about sixty-five miles per hour, swerving in and out of the oncoming lane for traffic and forcing an oncoming vehicle off of the road. After over a minute and a half of the patrol unit pursuing Bettes with its lights and sirens activated, Bettes crashed on the side of the road. Deputy Mosziek approached the vehicle and arrested Bettes. Deputy Mosziek then

---

[1] The State alleged that Bettes, prior to the commission of the primary offense, was finally convicted of: (1) burglary of a motor vehicle, (2) burglary of a building, and (3) robbery. *See* TEX. PENAL CODE ANN. §§ 29.02, 30.02, 30.04; *see also Samora v. State*, No. 07-16-00206-CR, 2017 WL 3611700, at *2 (Tex. App.—Amarillo Aug. 14, 2017, pet. ref'd) (mem. op., not designated for publication) (noting that burglary of a motor vehicle was a third-degree felony under previous version of Texas Penal Code).

secured a warrant and obtained a blood specimen from Bettes. The toxicology report showed that Bettes had cocaine in his system.

The jury returned a guilty verdict, Bettes pleaded true to the enhancement allegations, and the jury assessed punishment at sixty years' imprisonment in the Texas Department of Criminal Justice–Institutional Division. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

In determining whether the evidence was sufficient to support the conviction, we must view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Thus, when the record indicates conflicting inferences, this court must presume that those inferences were resolved in favor of the State. *Wise*, 364 S.W.3d at 903. This standard is the same for both direct and circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 307 (Tex. App.—Corpus Christi–Edinburg 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct jury charge lists all elements of the offense, is consistent with the indictment, and does not unnecessarily

increase the prosecution's burden of proof. *Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

## B. Applicable Law

A person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). The offense includes two conduct elements: the element of intentionally fleeing and the element of knowledge that a police officer is attempting lawfully to arrest or detain the person. *Riggs v. State*, 482 S.W.3d 270, 275 (Tex. App.—Waco 2015, pet. ref'd). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b).

A party's knowledge is a fact question for the jury and may be proven through circumstantial evidence. *See Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984); *Clay v. State*, 389 S.W.3d 874, 878 (Tex. App.—Texarkana 2012, pet. ref'd). The jury may "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). Evidence demonstrating that an officer in a vehicle is attempting to arrest or detain a person "generally consists of the officer displaying authority by the use of overhead/emergency lights and siren." *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). The offense of evading arrest supports the policy of encouraging suspects to yield to a show of authority by law

4

enforcement. *Redwine v. State*, 305 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

## C. Analysis

By his single issue on appeal, Bettes contends that the evidence was legally insufficient to support his conviction because the State did not show that he knew he was being chased by a police officer attempting to arrest or detain him.

Deputy Mosziek testified that even after he had activated his overhead lights and sirens on his marked patrol vehicle, Bettes continued to maintain his speed for "about three miles," until crashing on the side of the road. The video evidence introduced into the record reveals Deputy Mosziek at times pursued Bettes at a distance of approximately four car lengths, and that he had activated his sirens for over a minute and a half before Bettes crashed. The jury also had reason to believe that Bettes had a motive to evade arrest, as witness testimony showed that he had just sideswiped a Ford truck, and a toxicology report indicated that Bettes had cocaine in his system.

Bettes cites *Redwine* and *Griego v. State* as support for the argument that activating sirens and chasing a vehicle for some time does not prove beyond a reasonable doubt that the person pursued knew he was being chased by a police officer attempting to arrest or detain him. *See id.* at 368; *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.). However, *Redwine* does not stand for such a conclusion. In *Redwine*, the evidence demonstrated that two officers, in their patrol car, pursued Redwine for driving too near the center of the undivided road. *Redwine*, 305 S.W.3d at 361. Although one of the officers initially testified that they had activated their emergency lights and sirens, that testimony was undermined by the other officer, who testified that

5

the deputies chose not to activate their lights and sirens so as to remain undetected. *Id.* at 361, 364–65. Moreover, the absence of any dash cam footage also indicated that they had not activated their overhead lights. *Id.* at 361. When the officers arrived at Redwine's parked truck, Redwine had run into the woods. *Id.* at 362. The court noted that the officer's testimony, in which he claimed he had activated his lights and siren, was admittedly uncertain; the court noted that "in the absence of other evidence, the jury could not translate [the officer's] uncertainty into belief beyond a reasonable doubt." *Id.* at 368. Here, there is no such uncertainty. The testimony and dash cam footage in the record clearly show that Deputy Mosziek had both his overhead lights and siren activated for over a minute and a half while in close pursuit of Bettes, until Bettes crashed.

In *Griego*, two patrol cars with their lights flashing passed the defendant while going the opposite direction. 345 S.W.3d at 747*.* By the time the two patrol cars performed a U-turn and caught up with the defendant he had turned onto a side street. *Id.* at 747. The patrol cars followed him onto that street where he immediately took another turn, and then turned into his driveway. *Id.* The court noted that "the officers would have been visible in appellant's rearview mirror for approximately eight seconds," and thus a rational jury could not have found beyond a reasonable doubt that the defendant was aware of the officers pursuing him. *Id.* at 752. Here, Deputy Mosziek followed directly behind Bettes for over one and a half minutes, and during all of this time Bettes could have learned of the officer pursuing him. The patrol car's lights and siren were both activated and there were not cars in between Deputy Mosziek and Bettes. The amount of pursuit time here is also materially longer than that in *Griego*. Moreover, the pursuit in this case occurred on a highway, and at no point during the pursuit did Bettes

6

turn or distance himself so far from the patrol car that his ability to become aware of the patrol car would have been interrupted, as was the situation in *Griego*.

This case is more appropriately in line with *Lopez v. State*. *See* 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.). In *Lopez*, law enforcement officers activated their patrol car's lights and siren while behind and in pursuit of the defendant's vehicle. *Id.* at 497. The defendant continued traveling through a residential area for "approximately one and one-half minutes," making several turns before pulling into his driveway. *Id.* At trial, the defendant testified that he did not see the lights or hear the siren. *Id.* In that case, our sister court concluded that the evidence was sufficient to find that the defendant was aware law enforcement officers were attempting to arrest or detain him, even though the defendant personally denied such knowledge. *Id.* Here, Deputy Mosziek closely pursued Bettes on a highway in his marked patrol car. Both his siren and overhead lights were activated for one and one-half minutes. This was evidence of Deputy Mosziek's attempt to stop appellant's vehicle and an exertion of authority by law enforcement to which appellant did not yield. *See Duvall*, 367 S.W.3d at 513. Moreover, there was no testimony by Bettes at trial that he did not hear the siren or see the lights. Also, no turns were made throughout the entire period, and Bettes could have seen and heard Deputy Mosziek's marked patrol vehicle behind him throughout the pursuit.

Viewing the evidence in the light most favorable to the State, we conclude that a rational juror, applying common knowledge and experience, could have found beyond a reasonable doubt that Bettes had knowledge that the patrol unit behind him was attempting to perform a traffic stop. *See Acosta*, 429 S.W.3d at 624; *Wise*, 364 S.W.3d

7

at 903; *Lopez*, 415 S.W.3d at 497; *Duvall*, 367 S.W.3d at 513.  We overrule appellant's sole issue.

### III.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of June, 2019.