# NO. 12-21-00051-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MATTHEW LAIRD SHAFFER,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Matthew Laird Shaffer appeals his conviction for evading arrest in a vehicle. In two issues, he challenges the sufficiency of the evidence and certain costs assessed against him as a result of his conviction. We affirm.

### BACKGROUND

Appellant was indicted for the third-degree felony offense of evading arrest in a vehicle, alleged to have been committed on or about January 8, 2020.[1] Appellant elected to enter a plea of "not guilty" to the offense and have a trial by jury.

At trial, the State called Tyler Police Officers Jonathan Holland and Robert Main. Holland testified that, at the time of the offense, he was assigned to the street crimes unit, which focuses on "street-level crimes . . . drug interdiction, drug dealers, prostitution, gangs," and the bicycle unit. Holland was wearing his standard bike unit uniform the night of the offense and appeared before the jury in the same uniform while giving his testimony. Holland testified that he was on duty with another officer, in a plainly marked TPD Ford Explorer, conducting a traffic stop on another vehicle when Holland noticed Appellant traveling in a vehicle in the opposite lane of traffic. He was standing next to the passenger side of the parked marked patrol unit, with

---

[1] TEX. PENAL CODE ANN. § 38.04 (a), (b)(2)(A) (West 2016).

its red and blue lights flashing, when he made eye contact with Appellant as he drove past. Holland "realized that was somebody we needed to talk to based off the investigation we were already conducting." He noted that Appellant failed to signal a turn within the appropriate distance and decided to detain Appellant. Holland ran over to Appellant, who was stopped at a red traffic light at the intersection near where Holland was conducting the traffic stop, knocked on his window, and yelled loudly for Appellant to stop. Appellant looked at Holland and proceeded to drive through the red light northbound onto Troup Highway. Holland testified that Appellant turned his headlights off after he went through the intersection.

Holland broadcasted Appellant's description and direction of travel over police radio. Officer Main, who was in uniform but traveling in an unmarked unit, was behind Appellant when he ran the red light. Main testified that he followed Appellant and noticed Appellant's headlights remained off and he was driving erratically, even causing the vehicle to go up on two wheels at one point. Main testified that Appellant turned off Troup Highway onto another road and parked his vehicle in a residential driveway. Main exited his vehicle and placed Appellant under arrest. Appellant admitted he did not live at the residence nor did he know the residents. Main found drug paraphernalia on Appellant's person. Main testified that Appellant told him numerous times that he knew he was running from the police.

Holland and Main both wore body cameras the night of the offense, and the footage from those cameras was played for the jury.[2] After the close of evidence and argument by State and defense counsel, the jury found Appellant "guilty" of evading arrest in a vehicle. Appellant pleaded "true" to the State's allegation that he had a previous felony conviction, elevating his punishment range to two to twenty years of imprisonment.[3] The jury found the enhancement

---

[2] Large portions of the audio on Main's footage, which referenced that Appellant was on parole for a drug offense at the time of this offense, were redacted from the footage played to the jury in accordance with the Texas Rules of Evidence and Texas Code of Criminal Procedure. *See generally* TEX. CODE CRIM. PROC. ANN. §§ 37.07 Sec. 1 (verdict must be general); 2 (separate hearing on punishment); 3 (evidence of any matter judge deems relevant is admissible at punishment including but not limited to prior criminal record, reputation, character, opinion regarding character, circumstances of offense for which he was tried, and, not withstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible; regardless of whether he has previously been charged with or finally convicted of the crime or act); 37.07(g) (West Supp. 2021); TEX. R. EVID. 403 (excluding relevant evidence for prejudice, confusion or other reasons); 404 (character evidence, crimes, or other acts); 405 (methods of proving character); 608 (a witness's character for truthfulness or untruthfulness); 609 (impeachment by evidence of a criminal conviction).

[3] *See* TEX. PENAL CODE ANN. § 12.33(a); 12.42(a) (West 2005).

allegation "true" and sentenced Appellant to twenty years of imprisonment. This appeal followed.

<h2 style="text-align:center">SUFFICIENCY OF THE EVIDENCE</h2>

In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction. Specifically, Appellant challenges the State's evidence as to his knowledge that Holland was a police officer who was attempting to lawfully arrest or detain him.

**Standard of Review and Applicable Law**

When reviewing the sufficiency of the evidence, we determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* We give deference to the jury's responsibility to fairly resolve evidentiary conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. *Id.*

A person commits the offense of evading arrest or detention when he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. *See* TEX. PENAL CODE ANN.§ 38.04(a) (West 2016). Intent may be inferred from a person's words, actions, and conduct, including factors such as the person's speed, time, distance, and behavior of driving during the pursuit. *Smith v. State*, 483 S.W.3d 648, 654 (Tex. App.–Houston [14th Dist.] 2015, no pet.); *State v. Walker*, 195 S.W.3d 293, 300 (Tex. App.–Tyler 2006, no pet.).

**Analysis**

Appellant argues that because Holland "provided no display of authority prior to Appellant's driving off, the evidence is merely speculative that Appellant knew Holland was a police officer." In support of this contention, Appellant points to the fact that it was dark, and the area was unlit as Holland approached Appellant's vehicle and commanded him to stop. Appellant argues that, contrary to Holland's testimony that Appellant looked at him prior to driving off, Holland's body camera footage shows that Holland was shining a flashlight in Appellant's face while yelling at Appellant to stop. Appellant further contends that Holland "was not wearing a typical uniform of a Tyler police officer, never announced himself, or stated

that he was a police officer prior to commanding Appellant to stop." Appellant points out that approximately forty seconds passed between Appellant's coming into view of Holland's body camera and driving off after being commanded to stop. Appellant also challenges Main's testimony that he admitted numerous times that he knew Holland was an officer, claiming that Main's body camera footage does not contain the statements. Appellant argues:

> [Main's body camera footage] shows that Appellant agreed it "wasn't smart" to run from an officer who was telling him to stop, acknowledged that it is a big deal to run from the cops, and stated that he "made a horrible mistake." But each of these statements were made after Officer Main told Appellant that he had run away from a police officer. Moreover, Appellant's explanation that he was scared did not amount to an acknowledgement that Holland was a police officer. And even if Appellant was scared because he had drug paraphernalia, his admission of fear still does not mean that he knew the man who banged on the outside of his vehicle and yelled at him in the dark was a police officer.

(internal citations omitted).

In support of Appellant's argument, he cites to *Duvall v. State*, in which the Sixth Court of Appeals held the evidence insufficient to sustain a conviction for evading arrest where there was no evidence that the arresting officer displayed authority. 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). In *Duvall*, the officer was on duty in the early morning hours when he clocked Duvall, who had been drinking alcohol, speeding approximately ten miles per hour over the forty-mile limit. 367 S.W.3d at 510. The officer turned around to pursue, but never activated his overhead lights and sirens. *Id.* The officer testified that he did not activate his lights and sirens because there was too much distance between himself and Duvall and he wanted to "catch up" to Duvall before activating his lights and sirens. *Id.* The officer testified that when Duvall saw his police car, he "sped up even more." *Id.* The officer tried to catch Duvall but was "unable to overtake the vehicle" and never activated his lights and sirens. *Id.* The officer saw Duvall turn right onto a street and then saw the taillights fishtailing just before losing sight of Duvall. *Id.* Duvall's car skidded off the road, hit a tree, and landed against a residence. *Id.* Duvall's passenger, McKinney, recalled seeing the police car, but she blacked out prior to the accident. *Id.* McKinney testified she awoke after the accident and Duvall told her to run. *Id.* The officer came upon McKinney, but Duvall had already run away and was not arrested until later for evading with a vehicle. *Id.* at 511.

The appellate court ultimately concluded that the evidence was not sufficient to support Duvall's conviction because the evidence failed to show that Duvall knew the officer was a peace officer attempting to arrest or detain him. *Id.* at 513. In so concluding, the court reasoned that the intent of the evading statute is to deter flight from arrest or detention by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects. *Id.* (citing *Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977)). It supports an important public policy – encouraging suspects to yield to a show of authority by law enforcement. *Id.* (citing *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)). The court noted that proof an officer in a vehicle is attempting to arrest or detain a person generally consists of an officer displaying authority by the use of overhead/emergency lights and siren, but peace officers employ other methods to assert authority of law such as pointing to a driver to pull a vehicle over, verbal commands, and others. *Id*. However, in *Duvall*, there was "no evidence of any type of display of authority by a police officer." *Id*.

We find the facts of *Duvall* distinguishable from those at hand. Here, Holland did show authority when he approached Appellant in his uniform, knocked on his window, and commanded Appellant to stop. Moreover, Holland's body camera footage shows Appellant drove past Holland's and Main's marked unit, which had its lights flashing. Further, Holland testified that Appellant made eye contact with him as Appellant drove past his patrol vehicle. Thus, while Appellant notes that only forty seconds passed between Appellant's coming into view of Holland's body camera and Appellant driving off, there is evidence that Appellant had already seen Holland, and his marked patrol unit and its flashing lights, prior to stopping at the red light. Appellant also argues that Holland was not wearing a "typical" uniform, but Holland wore his uniform to trial, so the jury had the opportunity to view Holland's uniform as it appeared to Appellant on the night of the offense. Holland described the uniform as his bicycle unit uniform which contained sewn on badges instead of pinned on badges but testified that the badges and markings are clearly visible. Finally, Main testified that Appellant told him several times that he knew he was running from the police. While some of Appellant's statements were not heard on the heavily redacted audio, the jury was free to evaluate Main's credibility and the veracity of his testimony. *See Brooks*, 323 S.W.3d at 899. Thus, considering all the evidence in the light most favorable to the verdict, we conclude that the jury was rationally justified in

finding, beyond a reasonable doubt, that Appellant committed the offense of evading arrest in a vehicle. *Id.* We overrule Appellant's first issue.

## COURT COSTS

In his second issue, Appellant argues the trial court improperly assessed certain court costs in its judgment. Specifically, he argues the trial court erroneously assessed costs for the "county specialty court account" and overcharged the "courthouse security fund." We disagree.

Appellant contends that he should not have been charged the "county specialty court account" fee because it does not apply to his offense. Prior to June 2019, Article 102.0178(g) provided that funds received from costs on conviction of an offense under Chapter 49 of the Texas Penal Code (intoxication offenses) or Chapter 481 of the Texas Health and Safety Code (controlled substances offenses) would be deposited to the credit of the drug court account to help fund drug court programs. *See* TEX. CODE CRIM. PROC. ANN. Art. 102.0178(a), (g) (West 2018), *repealed by* Act of June 15, 2019, 86th Leg., R.S., ch. 1352, § 1.18, 2019 Tex. Gen. Laws 1352. But in June 2019, the Legislature redesignated that account to the "county specialty court account" under Section 134.101(b)(6) of the Texas Local Government Code, i.e., the Local Consolidated Fee on Conviction of Felony. *See* TEX. LOCAL GOV'T CODE ANN. § 134.101(b)(6) (West 2021). Section 134.101 assesses an additional $105 fee for persons convicted of felonies. *See id.* § 134.101(a). That $105 fee is to be allocated to the following specific accounts and funds: the clerk of the court account, the county records management and preservation fund, the county jury fund, the courthouse security fund, the county and district court technology fund, and the county specialty court account. *Id.* § 134.101(b). The Local Consolidated Fee on Conviction of Felony only applies to defendants who are convicted of offenses committed on or after January 1, 2020. *Id.* The date of Appellant's charged offense in the indictment is "on or about January 8, 2020." Therefore, the Local Consolidated Fee on Conviction of Felony, including the "county specialty court account," applies.

Next, Appellant complains that the bill of costs assesses a $10.00 "courthouse security fund" fee. He argues that, under Article 102.017 of the Texas Code of Criminal Procedure, a defendant convicted of a felony offense in a district court shall pay a $5.00 security fee as a cost of court. *See* TEX. CODE CRIM. PROC. ANN. Art. 102.017(a) (West Supp. 2021), *amended by* Act of June 15, 2019, 86th Leg., R.S., ch. 1352, § 1.08, 2019 Tex. Gen. Laws 1352. However,

Article 102.017 has been rewritten and applies to a cost, fee, or fine on conviction for an offense committed on or after January 1, 2020. *See* Act of June 15, 2019, 86th Leg., R.S., ch. 1352, § 5.01, 2019 Tex. Gen. Laws 1352 (current version at TEX. CODE CRIM. PROC. ANN. Art. 102.017 (West Supp. 2021)). Because Appellant's offense was committed in after January 1, 2020, the new legislation applies.

The bill of costs in Appellant's case includes the following costs as enumerated in Section 134.101: $40.00 Clerk of the Court, $4.00 County and District Court Technology Fund, $1.00 County Jury Fund, $25.00 County Records Management and Preservation, $25.00 County Specialty Court Account, and $10.00 Courthouse Security Fund. These total $105 in fees. As stated above, per the statute's effective date, Appellant is obligated to pay the Local Consolidated Fee on Conviction of Felony. *See Waters v. State*, No. 12-21-00108-CR, 2021 WL 6061566, at *1–2 (Tex. App.—Tyler Dec. 21, 2021, no pet. h.) (mem. op., not designated for publication) (disposing of same issues relating to "county specialty court account" and "courthouse security fund" for offenses committed on or after January 1, 2020).

Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having ***overruled*** Appellant's first and second issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered April 14, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 14, 2022**

**NO. 12-21-00051-CR**

**MATTHEW LAIRD SHAFFER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0287-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*