

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

REGINALD C. GILBERT, § No. 08-22-00188-CR

Appellant, § Appeal from the

v. § 142nd Judicial District Court

THE STATE OF TEXAS, § of Midland County, Texas

Appellee. § (TC# CR57536)

## MEMORANDUM OPINION[1]

A jury convicted Appellant Reginald C. Gilbert of evading arrest or detention in a motor vehicle, enhanced for a prior conviction, and assessed punishment at twelve years' confinement, which the trial court imposed. *See* TEX. PENAL CODE ANN. § 38.04(a)(b)(2)(A). The enhancement paragraph included a conviction for the felony offense of burglary of a habitation, to which Gilbert entered a plea of "true." On appeal, Gilbert asserts issues challenging the establishment of proper venue, complaining of improper jury argument, and contending the evidence was legally insufficient to support his conviction. We affirm.

---

[1] We hear this case on transfer from the Eleventh Court of Appeals in Eastland and apply that court's precedent as required by TEX. R. APP. P. 41.3.

# I.    BACKGROUND

On February 24, 2022, an indictment issued alleging that on December 27, 2021, Gilbert intentionally fled from Alexander Duwel knowing that he was a peace officer who was attempting to lawfully arrest or detain him by use of a motor vehicle. A jury trial was held in August 2022.

The State's presentation of evidence began with testimony from Alexander Duwel, a certified peace officer of the state. In December 2021, Duwel worked as a detective with the Midland Police Department assigned to the property division task force covering crimes related to thefts and burglaries. Specifically, he was investigating a string of burglaries reported in the city of Midland. Based on his investigation, Detective Duwel had identified four persons as suspects of the burglaries. The suspects included Gilbert, and his wife, Hope, along with Perry Futrell and Ashley Barrett.

On Monday, December 27, 2021, at around 10:00 a.m., Duwel conducted surveillance on a storage unit located at a facility in the 2900 block of West Kentucky Street. Specifically, he was observing storage unit 175 to corroborate information he had received identifying that unit as being used to store stolen items from the string of burglaries. On duty that day, Detective Duwel was driving an unmarked vehicle, a maroon Ford Taurus Interceptor. Though unmarked, the vehicle was outfitted with red and blue emergency lights and a siren. Duwel wore a black polo shirt, tan tactical pants, and a body armor vest displaying "Police" on its front and back.

While conducting surveillance, Detective Duwel observed a Ford F-150 pickup truck drive into the parking lot of the storage facility, then park directly in front of unit 175. Duwel approached the truck in his own vehicle intending to confirm the identification of the occupants of the truck. Before he made contact, the Ford F-150 drove away. Duwel testified the truck drove southbound and made a left into an alley that ran behind the storage complex. Duwel followed, driving on a

street running parallel until he was able to move behind the pickup truck. Duwel described that he activated his emergency lights and sirens soon after he drove behind the truck.

Duwel testified that when he activated the emergency lights and sirens, the vehicle did not pull over; rather, the driver continued "at a high rate of speed, meaning it was just higher than the posted speed limit." He acknowledged, however, that he did not know the exact speed. The truck turned once more and then came to a stop at an intersection. Once at rest, the pickup truck driver exited and began fleeing on foot. Duwel testified he immediately recognized Gilbert as the truck's fleeing driver. Duwel did not chase after him because there were two other occupants inside the truck. From an officer safety standpoint, he explained he chose to stay with the truck. The other two occupants were identified as Shane Gilbert and Hope Gilbert, who Duwel believed were Gilbert's brother and wife, respectively.

Duwel was not equipped with a body camera or in-car camera at the time of the incident. When Duwel called for backup, four officers arrived at his location and other officers also searched the area looking for Gilbert. He was not located that day. Duwel testified that Shane and Hope would not identify the driver, and neither were initially cooperative. Later, however, Duwel recalled hearing from Hope the name of "Brian" while they all remained on scene. He testified he never pressed for Brian's last name and did not otherwise follow up on the lead because "[he] knew it was [Gilbert]." Duwel applied for a warrant for the arrest of Gilbert.

The State also presented the testimony of Hunter Terral, the owner of the Ford F-150 that had been pulled over by Duwel. Terral testified he loaned his vehicle to Gilbert three times including at about 9:00 a.m. on the morning of December 27, 2021. Gilbert told Terral he only needed his vehicle for about 45 minutes. Gilbert had agreed he would pay him $150. Terral described that his vehicle was not returned as promised and neither Gilbert nor Hope answered

3

when he tried calling them. Eventually, he received a call from a sheriff's deputy informing him that his vehicle had been towed.

The defense called Hope Gilbert as a sole witness in its case in chief. Hope testified she had been married to Gilbert for eleven years. She testified that after the driver stopped the vehicle and fled on foot, she told the detectives that Gilbert was not the driver of the vehicle. Instead, it was a man named Brian. Hope also testified that Terral loaned the truck to her, and that Gilbert was never able to use the vehicle.

On cross-examination, Hope acknowledged she pleaded no contest to a charge of hindering apprehension. Previously, Hope had also pleaded no contest to a past burglary of a habitation charge. Hope also confirmed that Gilbert called her from prison on August 12, 2022, telling her not to use names in the phone conversation and to write down exactly what he was going to tell her. Gilbert then told Hope exactly what she needed to testify to at trial. Hope testified she did not write anything down because he only told her information that was truthful.

After the close of evidence, the jury returned a verdict finding Gilbert guilty of the offense of evading arrest or detention while operating a motor vehicle. During the punishment phase, Gilbert entered a plea of true to the enhancement paragraph of the indictment, which alleged Gilbert had been convicted in 2011 of the felony offense of burglary of a habitation. The jury then returned a verdict assessing a punishment of 12 years' imprisonment and no fine. The trial court imposed the sentence assessed by the jury.

This appeal followed.

## II.    ISSUES ON APPEAL

Gilbert presents three issues on appeal. First, he asserts the State failed to prove sufficient facts to establish venue in Midland County, Texas. Second, he contends the trial court abused its

4

discretion in overruling his objections to the State's improper jury argument and denying his motion for mistrial. Lastly, he urges the evidence was insufficient to sustain his conviction for evading arrest with a motor vehicle. Because Gilbert's sufficiency challenge would afford him the greatest relief, if sustained, we begin with the third issue.

### III.     LEGAL SUFFICIENCY OF THE EVIDENCE

Gilbert contends the evidence was legally insufficient to support his conviction for evading arrest and detention with a motor vehicle. Specifically, Gilbert asserts the State failed to establish he was the driver of the vehicle in question, and that he knew a law enforcement officer was attempting to lawfully detain him.

### A.  Standard of review and applicable law

In assessing the sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Because the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses, we may not reevaluate the weight and credibility determination made by the fact finder. TEX. CODE CRIM. PROC. ANN. art. 38.04; *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve

any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The elements of evading arrest of detention while using a motor vehicle are (1) intentionally fleeing (2) from a person whom the defendant knows is a peace officer (3) trying to lawfully arrest or detain him, and (4) using a motor vehicle while in flight. *See* TEX. PENAL CODE ANN. § 38.04(a). The accused must know the person from whom he is fleeing is a peace officer attempting to arrest or detain him. *See Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986). Unlawful fleeing is "anything less than prompt compliance with an officer's direction to stop[.]" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). Proof that an officer is attempting to arrest or detain can be shown by the officer displaying authority through use of a verbal command or by activating the lights and sirens of a police vehicle. *See Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). A jury may infer the defendant's knowledge from circumstantial evidence such as acts, words, and conduct. *Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd). "Though the statute requires that the officer have lawful authority to attempt an arrest or detention, the statute contains no exceptions or defenses based upon the officer's conduct before or after a person flees the officer's attempt to arrest or detain." *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). "The statute is directed at the conduct of the person, not the officer." *Id.*

## B. Analysis

### 1. Evidence of the driver's identity

Gilbert asserts the evidence was insufficient to establish he was the driver of the Ford F-150 pickup truck who fled from the scene of the detention. He argues that only Detective Duwel

6

identified him. Gilbert contends that Duwel based his belief on a "brief view of him allegedly exiting the vehicle" and the State did not present any corroborating evidence of fingerprints or DNA analysis from the steering wheel or the cab of the truck. Gilbert further argues that Hope Gilbert testified that she was in the vehicle and the truck was actually being driven by a man named "Brian." Because of this conflicting testimony, Gilbert contends a rational trier of fact could not have found beyond a reasonable doubt that Gilbert was the driver who fled the scene. We disagree.

The jury is the trier of fact and the sole judge of the weight of the evidence and credibility of the witnesses. TEX. CODE CRIM. PROC. ANN. art. 38.04; *Margraves*, 34 S.W.3d at 919. We may not reevaluate the weight and credibility determination made by the fact finder. TEX. CODE CRIM. PROC. ANN. art. 38.04; *Margraves*, 34 S.W.3d at 919. Because of this conflicting testimony, we must defer to the jury's determination and resolve the inconsistency in favor of the verdict. *Curry*, 30 S.W.3d at 406.

Here, Duwel testified that he was "positive" that the man who exited the vehicle and continued to flee on foot was Gilbert. Additionally, the State presented evidence that the owner of the vehicle testified he loaned the vehicle to Gilbert. The only conflicting evidence was the testimony of Hope Gilbert where she stated the driver was not Gilbert, but a man named Brian. She also testified the owner of the vehicle loaned her the vehicle and Gilbert never drove it. The jury was free to believe Duwel and disbelieve Hope. Moreover, the State presented evidence that the jury could have used to discredit Hope's credibility, including her prior convictions and her phone call with Gilbert prior to testifying.

Viewing the evidence in the light most favorable to the verdict, as we must, there was sufficient evidence to support the jury's finding that Gilbert was the driver who fled from the scene of the detention.

### 2. Lawfulness of the detention

Gilbert next contends there was no evidence in the record to show the driver knew Duwel was attempting to lawfully detain him. By his argument, Gilbert advocates for this Court to depart from the reasoning of other Texas courts and require the State to prove, as an essential element of the charge, that Gilbert had subjective knowledge he was being detained and the detention was lawful. But we are not persuaded by the argument.

As stated earlier, a person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a). As to this offense, our sister courts of appeals have consistently held that the State is not required to prove a defendant knew the detention was lawful. *See Espinoza v. State*, Nos. 05-21-00479-CR & 05-12-00480-CR, 2022 WL 14769864, at *2 (Tex. App.—Dallas Oct. 26, 2022, no pet.) (mem. op., not designated for publication) (collecting cases). Although the issue of whether the state must prove whether an accused "knew that the detention was lawful" is currently pending before the Texas Court of Criminal Appeals in *Nicholson v. State*, 594 S.W.3d 480 (Tex. App.—Waco 2019, pet. granted), we are not persuaded this signals a need for a different analysis. We reject Gilbert's argument and hold the State was not required to prove that Gilbert knew the attempted detention was lawful.

Rather, the Court of Criminal Appeals recently described that the text of the statue is plain: "it requires proof that an attempted arrest or detention is lawful at the time the person flees." *Day*, 614 S.W.3d at 127. The Court held that the word "lawfully," as it appears in the statute, does not incorporate exclusionary rule principles. *Id*. The Court noted, "the statute requires that the officer have lawful authority to attempt an arrest or detention[.]" *Id.* In that vein, it "contains no exceptions or defenses based upon the officer's conduct before or after a person flees the officer's attempt to

arrest or detain." *Id.* "Just as evidence that a defendant resisted arrest does not exist before an arrest because the resisting has not yet happened, evidence of evading arrest does not exist before the attempted arrest because the evading has not yet happened." *Id*. at 129.

As *Day* explains, evidence of flight shows an independent criminal act not causally connected to any evidence discovered through an unlawful detention by the officer. *Id*. (citing *State v. Iduarte*, 268 S.W.3d 544, 551 (Tex. Crim. App. 2008) (holding the exclusionary rule principles do not apply to the offense of evading arrest); *see also State v. Mayorga*, 901 S.W.2d 943, 946 (Tex. Crim. App. 1995) (concluding that where an officer arrests a person based on objectively reasonable information, and that person resists the detention, the evidence of the resistance is not obtained in violation of the law as contemplated by article 38.23 of the Code of Criminal Procedure). As our sister courts have held, the inclusion of the word "lawfully" in the text of the statute means the attempted arrest or detention must be lawful, not that the defendant must know that the attempted arrest or detention is lawful. *See Espinoza*, 2022 WL 14769864, at *2; *Mitchell v. State*, Nos. 05-12-00876-CR–05-12-00878-CR, 2013 WL 3929212, at *4 (Tex. App.—Dallas July 26, 2013, no pet.) (not designated for publication); *Etheridge v. State*, No. 08-12-00337-CR, 2014 WL 4952804, at *3 (Tex. App.—El Paso Oct. 1, 2014, no pet.) (not designated for publication) ("The only conduct made criminal by Section 38.04(a) is intentionally fleeing from an officer who is attempting to lawfully arrest or detain the person. If an officer attempts to *unlawfully* arrest or detain a person who is lawfully exercising his first amendment rights by protesting or speaking in public, and the person intentionally flees from the officer, the person could not be convicted of evading arrest or detention under Section 38.04(a) because the State could not prove that the arrest or detention was lawful."). Similar to the defendant in *Mitchell*,

9

Gilbert cites no case interpreting the evading detention statute as requiring proof that a defendant knew the detention was lawful, and we have found none. *See Mitchell*, 2013 WL 3929212, at *4.

Under the Fourth Amendment, a police officer may conduct an investigative detention if the "reasonable suspicion" standard is satisfied. *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). In formulating reasonable suspicion, a police officer can draw on his own experience and specialized training. *Id*. at 385. "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014)). Courts review a determination of reasonable suspicion by looking at the totality of the circumstances. *Johnson*, 622 S.W.3d at 385. "Sometimes, a police officer's limited knowledge of the circumstances can give rise to reasonable suspicion, even though 'the presence of additional facts might dispel reasonable suspicion.'" *Id*. (quoting *Glover*, 140 S. Ct. at 1191).

Here, the evidence at trial established that Detective Duwel was conducting surveillance on a storage unit because he had been informed through his earlier work that stolen items from a string of burglaries were stored in unit 175. Duwel also testified he had four suspects identified for the burglaries—Gilbert and three others. While working in an equipped but unmarked police vehicle and dressed in police attire, Duwel kept a look out on unit 175 to see if he could further corroborate the information he had developed through his investigation. Duwel then observed a Ford F-150 pickup truck drive into the parking lot and park directly in front of unit 175. Duwel testified that, because the vehicle pulled right in front of unit 175, he wanted to contact the occupants and get them identified. Pointedly, he described he was attempting "[t]o detain and contact them in reference to [his] investigation." *See Johnson*, 622 S.W.3d at 384 (providing that

10

a police officer may conduct an investigative detention if the "reasonable suspicion" standard is satisfied). Duwel established that, as he approached the F-150, it "took off." Detective Duwel followed in his vehicle, and after traveling a short distance, he activated his emergency lights and sirens. After the pickup came to a stop, the driver exited and began to flee on foot. Duwel immediately recognized the driver as Gilbert, who he further identified in the courtroom.

Considering all the evidence in the light most favorable to the verdict, as we are required to do, we conclude the jury could have rationally found the state proved the attempted arrest or detention was lawful beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 38.04; *Jackson*, 443 U.S. at 319.

We overrule Gilbert's third issue.

### IV.    VENUE

In his first issue, Gilbert asserts the State failed to prove sufficient facts to establish venue in Midland County, Texas.

### A.  Standard of review and applicable law

The State bears the burden or proving venue by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13.17; *Fulmer v. State*, 401 S.W.3d 305, 317 (Tex. App.—San Antonio 2013, pet ref'd). A reviewing court must presume venue was proven at trial unless venue was disputed, or the record affirmatively shows the contrary. TEX. R. APP. P. 44.2(c)(1); *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014). "The Court of Criminal Appeals has held that (1) venue is not an element of the offense, (2) failure to prove venue does not result in acquittal, and (3) failure to prove venue does not implicate a structural or constitutional error." *Cummings v. State*, No. 12-16-00122-CR, 2017 WL 1426796, at *1 (Tex. App.—Tyler Apr. 19, 2017, no pet.) (mem. op., not designated for publication) (citing *Schmutz*, 440 S.W.3d at 35–39).

**B. Analysis**

On appeal, Gilbert, asserts there was insufficient evidence to establish the flight took place inside Midland County because Duwel's testimony was that it occurred in "Midland." Gilbert asserts this line of questioning was not specific enough to establish the fleeing occurred in Midland County. From our review of the record, Gilbert did not raise the issue of venue during trial. We must presume venue was properly proven unless our review of the record affirmatively shows the contrary. *Schmutz*, 440 S.W.3d at 35; *Dill v. State*, 895 S.W.2d 507, 508 (Tex. App.—Fort Worth 1995, no pet.).

To find the record affirmatively shows the contrary, there must be "affirmative and conclusive proof in the record that the venue of prosecution was improperly laid." *Dill*, 895 S.W.2d at 508 (quoting *O'Hara v. State*, 837 S.W.2d 139, 143 (Tex. App.—Austin 1992, pet. ref'd)). We conclude the record does not conclusively establish that venue was improper in Midland County. Moreover, Gilbert does not even argue that venue was improper in Midland County, but instead asserts the evidence was insufficient to prove venue was proper in Midland County.

We overrule Gilbert's first issue.

## V.    JURY ARGUMENT

In his second issue, Gilbert contends the State improperly shifted the burden of proof during its closing argument.

### A. Standard of review and applicable law

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Permissible jury argument falls into one of four categories: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law

enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine alleged improper argument in light of facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

Courts have held that the State may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify. *See Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995). Jury argument pointing out that the defendant has failed to present evidence in his favor does not shift the burden of proof but instead summarizes the state of the evidence and is a reasonable deduction from the evidence. *See Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## B. Analysis

During its closing argument, the State argued in part:

> All of the credible evidence that you've been presented points to the fact that [Gilbert] was the driver that morning. You've been or heard a little but of testimony that maybe some guy named Brian was the driver or maybe [Gilbert] was at work that day. But have you been presented any evidence to that?

> Remember the example about my niece with the cake in jury selection. Is it possible the bird flew in and messed up the cake? Yeah, I mean, it's possible, but is it reasonable to believe that's what happened? No, it's not reasonable to believe that this mysterious Brian was driving the car that day, it's not reasonable to believe that [Gilbert] was at work that day, because you haven't been provided any evidence to show you that.

To this portion of the argument, Gilbert objected. He asserted the State was trying to shift the burden of proof to the defense by saying no evidence had been presented. The trial court overruled the objection. Later, the State further argued in part as follows:

> Don't get distracted by these theories that Defense counsel has thrown at you that may be possible. Focus on the evidence that was actually presented to you, what is credible in this case.

13

And like I said, again, I'm not trying to shift the burden. We have the burden to prove the case beyond a reasonable doubt, and I showed you how we did that. But if they're going to present to you these defense theories and just throw them at you and hope that you believe them - - if when Hope took the stand, she - - I don't believe but I could be mistaken, you can remove the testimony as you remember it. I believe she just said the name Brian. I don't believe that there was a last name mentioned. But if your husband was on trial or your significant other was on trial for a crime that they didn't commit and you knew that they were not guilty and you knew who the driver was, is that all the evidence that you're going to present to a jury? Because I would have first name, last name, date of birth, phone number, a photo showing that they looked like - -

At this point, Gilbert again objected, asserting the State's comment amounted to a shifting of the State's burden. Gilbert then asked to approach the bench where a mistrial was requested. The trial court denied the request. On Gilbert's request, the trial court instructed the jury that "the burden is 100 percent, always on the State of Texas[,]" and instructed them to "disregard any statements that may or may not be burden shifting." The trial court then denied Gilbert's motion.

On appeal, Gilbert contends the arguments impermissibly shifted the burden of proof onto Gilbert and he further points out the trial court agreed with his objection. First, we do not agree with Gilbert's characterization of the trial court's ruling. The trial court clearly denied Gilbert's objections. It's instruction to the jury does not show agreement; rather, the court informed the jury to disregard "any statement" that it found to be burden shifting.

Second, from our review of the context of the State's argument, it is clear the argument focused on the absence of a reasonable inference. Gilbert presented evidence from Hope that the true driver of the vehicle was someone named Brian. Notably, however, only his attorney mentioned the full name of Brian Davis. Challenging the credibility of the evidence, the State argued there was no support for the identification. The State's argument simply summarized the evidence to show it established Gilbert as the driver and that there was no evidence introduced to

14

support the possibility of another driver. *Brown*, 270 S.W.3d at 570. Accordingly, we hold the State's argument did not impermissibly shift the burden of proof to Gilbert.

For this reason, we conclude the trial court did not err in overruling Gilbert's objections. We overrule Gilbert's second issue.

## VI.     CONCLUSION

Having overruled all of Gilbert's issues, we affirm.


GINA M. PALAFOX, Justice

May 11, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)