

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-11-00230-CR

CEDRIC CHARLES CLAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2010F00090

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# O P I N I O N

In Cass County, Texas, Cedric Charles Clay was tried to a Cass County jury and convicted of one count of engaging in organized criminal activity.[1] Clay was sentenced to a term of life imprisonment and a $10,000.00 fine.[2]

On appeal, Clay contends that the evidence supporting his conviction for engaging in organized criminal activity was legally insufficient.[3]

We affirm the trial court's judgment because there is sufficient evidence that Clay engaged in organized criminal activity.

On or about January 28, 2010, in Atlanta, Texas, Wilton Haynes drove Gregory Young and Clay to an apartment complex where he picked up three teen-aged girls, Amy, Sherry, and Marie.[4] Sherry and Marie alleged that they were subsequently driven to several different houses, where they were sexually assaulted and forced to ingest cocaine. A few days later, Marie made an outcry to her parents, an investigation was conducted, and these charges were filed.

---

[1]In this case, trial court cause number 2010F00090, Clay was indicted on one count of aggravated sexual assault of a child (count 1) and one count of engaging in organized criminal activity (count 2). He was convicted of count 2, and acquitted of count 1. All the counts listed in trial court cause number 2010F00090 related to one alleged victim, Sherry. All charges related to a second alleged victim, Marie, were made in trial court cause number 2010F00089, and they stem from the same facts as, and were tried simultaneously with, the charges of cause number 2010F00090. Clay's appeal from trial court cause number 2010F00089 is addressed in cause number 06-11-00229-CR.

[2]The range of punishment was enhanced due to Clay's prior offenses.

[3]Clay also argues that: (1) the trial court improperly limited voir dire of the jury panel regarding the parameters of proof beyond a reasonable doubt; (2) the trial court improperly limited his cross-examination of an alleged victim; (3) the trial court improperly excluded a portion of a defense witness's testimony; and (4) the County Court at Law judge erred by failing to grant a continuance after the presiding judge became ill. We addressed these issues in detail in our opinion of this date on Clay's appeal in cause number 06-11-00229-CR. For the reasons stated therein, we likewise conclude that error has not been shown in this case.

[4]As the three girls are minors, we have used pseudonyms for their protection.

The three girls[5] were at a friend's home at the Holly Hills Apartments in Atlanta, Texas. They left the apartments and were picked up by Haynes (a/k/a Butch). Clay (a/k/a C.B.) and Young (a/k/a Solo) were also in Haynes' car. Neither Marie nor Sherry knew the men in the car.

Haynes drove them all to the home of Carl James (a/k/a Peanut). James was an admitted drug user who preferred crack cocaine. James testified that he and his girlfriend had been drinking beer and using crack cocaine before Young and Clay arrived at the house. James' written statement indicated that Clay and Young arrived with Amy and two white girls, but he testified that the two men arrived with only "two white girls."[6] He testified that he did not see anyone else using drugs, but his prior statement indicated Clay and those with him were snorting cocaine. Young gave him a twenty dollar rock of cocaine in exchange for letting them "use the room." He said that Young went into the bedroom with two girls, but he did not see any sexual activity or guns. Young and Clay provided him with drugs in exchange for the use of the bedroom.

At James' house, Sherry, Marie, Amy, Young, and Clay went into the back bedroom. Marie testified that Clay had a black handgun "[o]n his side" and threatened to kill her if she ever told anyone about this. While all of them were in the bedroom, Marie also saw a gun on the table next to Young. Both Sherry and Marie claim that Clay forced them to inhale several lines of cocaine, and Marie remembered seeing Young look at a gun on the table like he was "going to do something with it if we" refused.

---

[5]At the time, Amy and Marie were fourteen years old and Sherry was fifteen years old; the girls considered each other to be best friends.

[6]If there was also a black female with them, James did not remember her.

Everyone left the bedroom except for Sherry and Young. Sherry testified that Young sexually assaulted her. She remembers Clay and Young threatening that, if the girls told anyone, they (Clay and Young) would shoot them (the girls) and their family. Sherry testified that she saw a gun in a corner with a sheet over it and a handgun on a table.

Marie testified that, while Young and Sherry were in the bedroom, Clay brought out some cocaine and she, Clay, and Amy inhaled several more lines. Marie testified that Clay directed her to the laundry room, where he sexually assaulted her. She "told him no and he kept going" and he told her "[n]ot to tell [Amy]."

After Sherry and Young left the bedroom, Clay pulled Marie into the bedroom and sexually assaulted her again. She told him to get off of her, but Clay put his gun close to her head. Clay left the bedroom, and Young entered the room and sexually assaulted Marie.

Clay had taken Sherry and Amy outside, where another car was waiting. There is disputed testimony regarding whether Amy, Sherry, or both girls went back into the house to get Marie. Sherry testified that she went back in to get Marie and she saw Young and Marie in the bedroom and Marie had her pants and panties off. Amy testified that, when she went back in to get Marie, she saw Marie and Young in the bedroom. Amy saw that Marie had her shirt off, but her pants and bra on, and Young had only his underwear on. Marie testified that Sherry came back into the bedroom and saw her with her pants off and Young clothed only from the waist up.

Outside the house, the other two girls and Clay were waiting in Corvell Anderson's car when Marie joined them. Anderson drove them to the home of Tony Hill (a/k/a Thriller). Sherry and Amy went to the living room, while Marie and Clay went to the bedroom. At Hill's

4

house, Marie testified that Clay sexually assaulted her, that she had to perform oral sex on Hill, and that Anderson also sexually assaulted her.

While they were all at Hill's house, Amy remembered Clay saying that Marie "wanted to trick, she wanted to make some money[,]" and "she didn't want [her] to think nothing different of her." Amy and Sherry stayed at Hill's house while Marie, Clay, and Anderson got back into Anderson's car and drove Marie to several other houses, where, Marie testified, several different men paid Clay and then sexually assaulted her before Clay and Anderson picked her up and took her to another house. In between these trips, Marie was taken back to Hill's house a couple of times, where she was sexually assaulted by Clay, Hill, and Anderson, as well as made to use more cocaine. Hill confirmed that he had sex with Marie during one of her return trips to his house.

Young was at one of the houses where Anderson and Clay had driven Marie. Marie testified that Young took her into a bedroom and sexually assaulted her. While at that house, two unidentified men also sexually assaulted her.

Sherry confirmed that she was at Hill's house for a couple of hours. She and Amy remembered Clay and Anderson leaving with Marie a couple of times.

After Marie was brought back to Hill's house for the second (and last) time, Anderson saw that the other two girls were asleep on the couch. Anderson said Clay talked to Marie for a few minutes, then he (Anderson) went into the back room with Marie and had sex with her. After having sex with Marie, Anderson woke up Sherry and Amy and drove all three girls to a place on Main Street called Dixie Maid, where the girls told him to stop, and they walked back to

5

Marie's home. Amy testified that, during the walk, Marie was not upset and that she was in a good mood.

Anderson confirmed that he snorted cocaine a few times that night and that he had oral sex and vaginal sex with Marie at Hill's house. He said Marie voluntarily disrobed for him and asked him what he wanted to do. Anderson also confirmed that he drove Clay and Marie to three houses that night (including Hill's). In exchange for the driving he did that night, Clay provided Anderson with cocaine.

Clay was charged with two counts of sexual assault of a child, engaging in organized criminal activity and aggravated sexual assault. After a jury trial, Clay was found guilty of one count of engaging in organized criminal activity and sentenced to life in prison.

Clay argues that there is legally insufficient evidence to support the jury's verdict that he engaged in organized criminal activity.

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of engaging in organized criminal activity beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

To secure a conviction for engaging in organized crime, the State had to prove that Clay: (1) with intent to establish, maintain, or participate in a combination or in the profits of a combination, (2) committed or conspired to commit aggravated sexual assault. TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2012); *Munoz v. State*, 29 S.W.3d 205, 208 (Tex. App.—Amarillo 2000, no pet.); *see Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988).

Intent and knowledge are fact questions for the jury and are almost always proven through circumstantial evidence. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). A jury may infer intent from any facts that tend to prove the combination's existence, including the defendant's words, acts, and conduct and the method of committing the enumerated offense. *Arredondo v. State*, 270 S.W.3d 676, 682 (Tex. App.—Eastland 2008, no pet.) (citing *Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002)).

7

A combination means three or more persons who collaborate in criminal activities, even though the participants may not know the others' identities, the membership may change from time to time, and the participants may stand in a wholesale-retailer or other arm's-length relationship in illicit distribution operations. *See* TEX. PENAL CODE ANN. § 71.01(a) (West 2011). "Conspires to commit" means "that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." TEX. PENAL CODE ANN. § 71.01(b) (West 2011). "It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal." *Arredondo*, 270 S.W.3d at 682. However, proof of a single, ad hoc effort is insufficient. *Id.* "Profits" consist of any "property constituting or derived from any proceeds obtained, directly or indirectly, from an offense listed in Section 71.02," such as aggravated sexual assault. TEX. PENAL CODE ANN. § 71.01(c) (West 2011).

The offense of engaging in organized criminal activity requires that "the actor must not only agree to participate but must himself perform some overt act in pursuance of that agreement." *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988); *Pardue v. State*, 252 S.W.3d 690 (Tex. App.—Texarkana 2008, no pet.); *State v. Mauldin*, 63 S.W.3d 485, 487 (Tex. App.—Tyler 2001, pet. ref'd). The overt act, though, "need not be criminal in itself" and "acts that suffice for party liability—those that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense—would also satisfy the overt act element of section

71.02." *Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003) (footnote omitted); *In re L.A.S.*, 135 S.W.3d 909, 919 (Tex. App.—Fort Worth 2004, no pet.).

The indictment alleges that Clay, Young, and James collaborated and conspired to commit aggravated sexual assault of Sherry and Young and James performed an overt act in pursuance of their agreement by utilizing a bedroom in Hill's home for the purpose of sexually assaulting Sherry. First, Clay argues that there is no evidence that James was part of an agreement with Clay and Young to work on a common project and that James' actions were inconsistent with realizing the common goal of committing aggravated sexual assault because the one-time use of James' room was a single, ad hoc effort by James that did not indicate an intention to work together in a "continuing" course of criminal activities. We disagree.

Clay, Young, and the girls were dropped off at James' house. Clay knocked on the door and James let them all enter the house. James testified that, "at the time they came over to my house," Clay gave him a "twenty dollar rock" of cocaine "to use the room." He saw Clay, Young, and the girls go to his back room, and "[f]irst [Clay] went back there and he stayed about like five or ten minutes. He came back, and then [Young] went back there, and [Young] was back there for the rest of the time . . . ." He saw that Marie and Sherry were "back there" at the time Clay and Young each used the room. Anderson arrived, entered James' house, went into the back room where the girls were and snorted lines of cocaine.

The fact that Clay brought his friend and the girls to James' house and paid him with drugs indicates that they had an agreement to use the room and that James profited from that agreement. *See* TEX. PENAL CODE ANN. § 71.01(b). It is evidence that Clay and Young each

9

made separate trips to the back room where the girls were and James apparently allowed Anderson to enter the room as well, thereby presenting sufficient evidence of a continuing activity occurring in the room. Viewing the evidence in the light most favorable to the jury's verdict, we find that there is sufficient evidence from which a rational jury could find the elements of organized criminal activity beyond a reasonable doubt. Therefore, we overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted::      November 6, 2012
Date Decided::      December 28, 2012

Publish

10