

# NUMBER 13-22-00125-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GARY GARCIA,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                  Appellee.

## On appeal from the 24th District Court
## of DeWitt County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Hinojosa

Appellant Gary Garcia was convicted of evading arrest or detention with a vehicle and with a previous conviction for evading arrest or detention, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A). He was sentenced to five years' imprisonment, with the sentence suspended and community supervision imposed for five years. On appeal, Garcia argues by one issue that the evidence was insufficient to

support a finding that he knew, at the time he was operating his vehicle, that police were attempting to arrest or detain him. We affirm.

## I.    BACKGROUND

Garcia was charged by indictment with three counts of evading arrest or detention, all arising out of events which allegedly occurred on the afternoon of July 16, 2019.[1] At trial, Officer Jason Kuecker of the Cuero Police Department testified that on the date in question, he and a trainee were doing a "routine patrol" in a marked police unit on Evers Street in Cuero, when he saw "a vehicle with a male victim [sic] inside that was not wearing his seat belt." Kuecker stated that failure to wear a seat belt while operating a vehicle is an "arrestable offense," so he instructed his trainee to pursue the vehicle. Kuecker explained that, because "[t]hat part of Evers is very narrow," the patrol unit had "to make a few extra turns to make it around" to where the vehicle had gone. He stated the officers located the suspect vehicle near the area of Baker Street and St. Charles Street. Keucker testified that he activated the patrol unit's emergency lights after the vehicle turned east from Aransas Pass Street onto West Broadway and crossed railroad tracks.

According to Kuecker, the suspect vehicle did not stop at that point but turned right onto Gazzie Street, then left onto West Live Oak Street, then right on to Frederick Williams Street, and finally left onto West Courthouse Street. Though there were stop signs at many of the intersections, Kuecker stated that the vehicle did not stop at the stop signs;

---

[1] Count I alleged Garcia evaded arrest or detention with a vehicle and had a prior conviction for evading arrest or detention, a third-degree felony; Count II alleged that he evaded arrest or detention and had a prior conviction for evading arrest or detention, a state jail felony; and Count III alleged that he evaded arrest or detention and a person suffered serious bodily injury as a result of the attempt to apprehend him, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(A), (b)(2)(A), (b)(2)(C). Count III was abandoned prior to trial.

further, he stated that the vehicle was going between forty-five and fifty miles per hour, even though the speed limit in the area was thirty miles per hour. Kuecker agreed that, even though the police car and the suspect car were not always on the same street, "there [we]ren't any cars or any obstructions between you seeing him and him seeing lights and hearing sirens." He said the suspect's window was half-way down and he did not hear any radio coming from the vehicle.

Kuecker testified that he activated the unit's siren "[s]omewhere in the area of West Live Oak," though he could not recall the exact location. He testified as follows:

| Q. [Prosecutor] | So when you put the siren on does that cause that vehicle to react? I mean, did anything happen with that vehicle? |
|---|---|
| A. [Kuecker] | No. |
| Q. | Okay. And then the vehicle stops where? |
| A. | In the housing authority projects on West Courthouse. |
| Q. | What happens when the vehicle stops? |
| A. | The driver takes off running, exits the vehicle and takes off running. |

Eventually, the suspect was tackled, arrested, and identified as Garcia.

Kuecker explained that the unit's dashcam and his bodycam automatically began recording thirty seconds prior to when he first activated the emergency lights. Video recordings from both cameras, as well as the trainee's bodycam, were entered into evidence and played for the jury. The dashcam video shows that Garcia's vehicle was visible to the officers as soon as they turned onto West Broadway. Each time the officers turned and had Garcia in their sights ahead of them, Garcia promptly turned onto another street. Beginning shortly before Garcia turned from West Live Oak Street onto Frederick

3

Williams Street, the patrol unit's siren can be heard on the video recording. When the officers turned onto Frederick Williams Street, Garcia's vehicle can be seen turning on to West Courthouse Street, where Garcia then legally parked the vehicle in a driveway and fled on foot. At that point, the siren stopped and the officers pursued Garcia. The videos do not definitively indicate whether or when the patrol unit's emergency lights were activated.

Officer Paul Leal of the Cuero Police Department, Kuecker's trainee that day, testified that he was driving the patrol unit and that the emergency lights were activated "[w]hen the vehicle turned eastbound on Broadway Street."[2] Leal acknowledged on cross-examination that Garcia was in the process of turning when the emergency lights came on, so he agreed that Garcia would not have been able to see the lights through his rear-view mirror at that specific time. Leal also agreed that Garcia would not have seen the patrol unit in his rear-view mirror at the specific time the siren was activated, again because he was already in the process of turning onto the next street.

In accordance with the court's instructions, after finding Garcia guilty on Count I, the jury did not consider Count II. Garcia was sentenced as set forth above, and this appeal followed.

## II.    DISCUSSION

### A.    Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim.

---

[2] Leal testified that there was a "flash" visible at the thirty-second mark of the dashcam video, indicating that the emergency lights came on at that point. However, we perceive no such "flash" in our review of the recording.

4

App. 2009). In reviewing evidentiary sufficiency, we consider "the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04. Thus, we defer to the jury's resolution of any conflicts in the evidence. *See Brooks*, 323 S.W.3d at 899.[3]

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Byrd*, 336 S.W.3d at 246 (quoting *Malik*, 953 S.W.2d at 240).

Here, a hypothetically correct jury charge would instruct the jury to find Garcia guilty on Count I if it found beyond a reasonable doubt that: (1) Garcia intentionally fled from a person he knew was a peace officer attempting lawfully to arrest or detain him; (2) Garcia used a vehicle while he was in flight; and (3) Garcia was previously convicted for evading arrest or detention. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A). A person

---

[3] In its brief, the State cites case law concerning factual sufficiency of the evidence only. But factual sufficiency review in criminal cases was abolished by the Texas Court of Criminal Appeals in 2010. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).

5

acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b).

## B. Analysis

Garcia does not dispute that he committed an offense under § 38.04 by running from officers on July 16, 2019, nor does he dispute that he has previously been convicted of evading arrest or detention.[4] Moreover, Garcia does not challenge the lawfulness of the attempted arrest or detention. Instead, he argues that he did not know the officers were attempting to arrest or detain him at the time he was operating his vehicle. In other words, he claims the evidence did not show beyond a reasonable doubt that he was aware of the police presence before he stopped and exited his vehicle on foot. Therefore, he contends the offense is not a third-degree felony, and he asks us to reverse and remand for new sentencing proceedings. *See id.* § 38.04(b)(1)(A) (providing that evading arrest or detention is a state jail felony if the actor did not use a vehicle while in flight but was previously convicted of evading arrest or detention).

For an evading arrest or detention conviction, "it is essential that a defendant know the peace officer is attempting to arrest him." *Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986); *see Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd) (noting that a person commits the offense of evading arrest or

---

[4] Trial testimony established that Garcia had previously been convicted of a misdemeanor under penal code § 38.04 in April of 2011.

6

detention only if the person "knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority"). A person's knowledge is a fact question for the jury and may be proven through circumstantial evidence. *See Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984); *Clay v. State*, 389 S.W.3d 874, 878 (Tex. App.—Texarkana 2012, pet. ref'd). The jury may "use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). Evidence demonstrating that an officer in a vehicle is attempting to arrest or detain a person "generally consists of the officer displaying authority by the use of overhead/emergency lights and siren." *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd).

Garcia cites *Redwine*, 305 S.W.3d at 360, and *Griego v. State*, 345 S.W.3d 742 (Tex. App.—Amarillo 2011, no pet.), both cases where courts found insufficient evidence to support an evading arrest conviction. In *Redwine*, the State conceded that officers "did not activate their vehicle's overhead lights or otherwise demand appellant's surrender until after he had exited his truck"; instead, the State argued that the jury could have inferred appellant's knowledge of police pursuit "from a written statement in which appellant acknowledged he turned off the main road 'to avoid contact' with the officers." 305 S.W.3d at 363. The court found that this was insufficient to show that appellant evaded arrest with a vehicle. *See id.* at 368. In *Griego*, "neither officer testified that appellant saw or should have been able to see them in pursuit of him until the point at which they turned in behind appellant"; instead, "each testified that he was uncertain whether appellant saw him." 345 S.W.3d at 751. As in *Redwine*, the court concluded that

7

the evidence was insufficient "to show that appellant knew, *before getting out of his car*, that the officers were attempting to arrest or detain him." *Id.* at 754–55.

In arguing that his case is similar to *Redwine* and *Griego*, Garcia points to Leal's testimony that Garcia was turning when the patrol unit's emergency lights came on, and therefore, Garcia would not have been able to see those lights in his rear-view mirror at that point. Leal also testified that Garcia was turning at the time the siren was activated; therefore, he would not have been able to see the police car in his rear-view mirror at that exact moment either. However, though it is undisputed that Garcia would not have been able to see the police car in his rear-view mirror at the exact moments when the emergency lights and siren were first activated, that does not mean that Garcia *never* saw the police car following him with its emergency lights on.

Kuecker testified that he turned the emergency lights on after Garcia turned onto West Broadway and crossed the railroad tracks. As noted, the dashcam video did not confirm or dispel this testimony, and the jury was entitled to believe it. *See Brooks*, 323 S.W.3d at 899; *cf. Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) ("[W]hen evidence is conclusive, such as a written and signed agreed stipulation of evidence or 'indisputable visual evidence,' then any trial-court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling." (quoting *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring))).[5] The dashcam video shows that, after the point at which Kuecker stated the emergency lights

---

[5] We note that Garcia's vehicle can be seen turning from West Broadway to Gazzie Street at the thirty-second mark of the dashcam recording, which is consistent with Kuecker's testimony that: (1) he turned the emergency lights after Garcia crossed the railroad tracks on West Broadway, and (2) the dashcam automatically records thirty seconds before the emergency lights are activated.

8

were activated, Garcia made four consecutive turns, and the officers followed almost exactly one block behind. Two of those turns were made after the siren was activated. Kuecker testified that "there [we]ren't any cars or any obstructions" between the police unit and Garcia's car, and the video corroborates that testimony. Indeed, Garcia's car is briefly but clearly visible on the dashcam recording as he made each of the four turns. And, just prior to the siren being activated, both vehicles were driving in the same direction on West Live Oak Street for several seconds before Garcia turned again. A rational juror could have concluded that Garcia was aware that officers were behind him and were attempting to arrest or detain him at that point.

Garcia notes that, according to one of the bodycam videos, he can be heard complaining after his arrest that the officers did not display their emergency lights. However, the jury was entitled to disbelieve this evidence and instead to believe the officers' testimony at trial to the contrary. *See Brooks*, 323 S.W.3d at 899.

Finally, unlike in *Redwine* and *Griego*, there was additional circumstantial evidence tending to establish that Garcia knew he was being pursued by police while he was operating his vehicle. In particular, Kuecker testified that Garcia ran several stop signs and was speeding during the ostensible pursuit. Moreover, it is undisputed that Garcia fled on foot after he parked his car. *Cf. Griego*, 345 S.W.3d at 753 (noting that "[e]vidence that appellant got out of his car and, instead of running or hiding, began walking toward the residence while carrying a beer also indicates that he did not know officers were attempting to arrest or detain him").

For the foregoing reasons, we conclude a rational juror could have found beyond a reasonable doubt that Garcia knew officers were lawfully attempting to arrest or detain

9

him and intentionally fled from them using a vehicle. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A). The evidence was therefore sufficient to support conviction on Count I. We overrule Garcia's issue on appeal.

### III. Conclusion

The trial court's judgment is affirmed.

LETICIA HINOJOSA
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed on the
11th day of August, 2022.