

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00050-CR

———————————————

RONNIE JACKSON JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1646727

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

After striking a police officer with a stolen vehicle while evading arrest, Appellant Ronnie Jackson Jr. was convicted of aggravated assault of a public servant with a deadly weapon.[1]  *See* Tex. Penal Code Ann. §§ 22.01(a), 22.02(a)(2), (b)(2)(B). On appeal, Jackson argues in two points that the evidence is legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt (1) that Jackson was driving the vehicle when it struck the officer or (2) that he acted with the requisite intent or knowledge.  We will affirm.

### I. BACKGROUND

On June 11, 2020, Jackson—by his own admission—stole a black Dodge Journey from the parking lot of Barrow Land Surveying, where the vehicle's owner worked.  The theft was caught on surveillance footage.

Two days later, Fort Worth Police Officer Lisa Guerrero observed that same Dodge Journey driving erratically while heading northbound on Interstate 35 in Fort Worth.  She turned on her overhead lights to initiate a traffic stop, but the vehicle did not stop.  Instead, it sped up, touching off a high-speed chase that covered approximately twenty miles.  During the chase, the Dodge Journey continued to maneuver dangerously, and at one point, it struck a pickup being driven by Jeremy

---

[1]Jackson was charged by indictment with five offenses: (1) attempted capital murder, (2) aggravated assault of a public servant with a deadly weapon, (3) aggravated assault causing serious bodily injury, (4) aggravated assault with a deadly weapon, and (5) felony evading arrest.  Before trial, the State elected to proceed only on the charge of aggravated assault of a public servant with a deadly weapon.

Day while attempting to squeeze between Day's pickup and another vehicle in the neighboring lane.

Multiple Fort Worth Police Department officers responded to calls to assist in bringing an end to the chase. Among them were Officers Matthew Casey and Matthew Brazeal, who headed toward the Camp Bowie exit on Highway 820. While Officer Casey diverted traffic into the two left lanes of the four-lane highway, Officer Brazeal attempted to deploy stop sticks in the exit lane—the only lane not blocked by a police vehicle or slow-moving traffic.

As Officer Brazeal began deploying the stop sticks, the Dodge Journey was barreling down the highway. As the Dodge Journey approached the Camp Bowie exit, it swerved onto the shoulder to avoid the standstill. It then continued onto the median, running directly into Officer Brazeal despite having room to avoid him. Officer Brazeal was dragged several hundred yards before the Dodge Journey sped off down the Highway 820 access road.

After seeing Officer Brazeal get hit, Officer Guerrero continued her pursuit of the vehicle. Eventually she lost sight of it, but she continued to look for it in nearby neighborhoods.

Multiple squad cars and an Air One helicopter unit assisted in the search. Officer Jaskie, who was flying the Air One unit, spotted a vehicle matching the Dodge Journey's description and made a radio announcement that the suspect that he saw

"was a light-skinned black . . . or Hispanic male with blue jean shorts or shorts, short hair but not shaved and a dark . . . , short-sleeved shirt."

The Dodge Journey was eventually found in a neighborhood approximately three miles east of the location where Officer Brazeal had been struck. The vehicle was initially discovered by Jerry Jefferson, who found it parked under a carport in his dad's driveway while stopping off to pick up food for a family celebration. Officers arrived at the house shortly after Jefferson spotted the vehicle, and one of the officers walked the property with Jefferson but found no one. About an hour later, Jefferson noticed someone sitting in the family's white Thunderbird and immediately notified Officer Dutch Rovell, who had been stationed behind the Dodge Journey.

Officer Rovell and several other officers surrounded the Thunderbird and ultimately arrested the suspect—Jackson—without incident. When asked why he was in the car, Jackson, who was not wearing a shirt or shoes, claimed that he was about to purchase it. After Jackson was removed from the Thunderbird, the officers found the keys to the stolen Dodge Journey tucked into a crease in the Thunderbird's passenger's seat. As he was being escorted into jail, Jackson admitted that he had stolen the Dodge Journey.

About a week after Jackson was arrested, Jefferson found "a lot of odd things" underneath another family vehicle that had been parked next to the Thunderbird. These items included two cell phones, a blue pullover shirt, a pair of shoes, and a baseball cap. Detective Anthony Rimshas testified that the distinctive baseball cap

4

and shoes matched those worn by the man who could be seen stealing the Dodge Journey on the surveillance footage from Barrow Land Surveying.

Jackson was indicted for five offenses, including aggravated assault of a public servant with a deadly weapon. Jackson pleaded not guilty and was tried by a jury, which convicted him of aggravated assault of a public servant with a deadly weapon. After a punishment trial, Jackson was sentenced to life in prison. Jackson filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. App. P. 21.8(a), (c). This appeal followed.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute

5

our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads

a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

Here, to convict Jackson of aggravated assault of a public servant with a deadly weapon, the jury was required to find beyond a reasonable doubt that (1) Jackson (2) intentionally or knowingly (3) caused bodily injury (4) to Officer Brazeal, (5) a public servant, (6) by striking him (7) with a motor vehicle (8) while Officer Brazeal was lawfully discharging an official duty and (9) that Jackson knew that Officer Brazeal was a public servant and (10) used or exhibited a deadly weapon (i.e., the motor vehicle) during the commission of the offense. *See* Tex. Penal Code Ann. §§ 22.01(a), 22.02(a)(2), (b)(2)(B).

Direct evidence of each element is not required, and "[c]ircumstantial evidence alone is sufficient to establish guilt." *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Indeed, "[i]ntent and knowledge . . . are almost always proven through circumstantial evidence." *Clay v. State*, 389 S.W.3d 874, 878 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)). Likewise, "[i]dentity may be proved through direct or circumstantial evidence, and through inferences." *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (first citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981); then citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); then citing *Roberson v. State*, 16 S.W.3d 156, 157 (Tex. App.—Austin 2000, pet. ref'd); then

7

citing *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); and then citing *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "No formalized procedure is required for the State to prove the identity of the accused." *Garcia v. State*, No. 13-22-00001-CR, 2022 WL 3257538, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 11, 2022, no pet.) (mem. op., not designated for publication) (citing *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018)).

## B. Sufficient Evidence Shows That Jackson Was the Driver

In his first point, Jackson contends that the evidence is insufficient to support the jury's finding that he was driving the Dodge Journey when it hit Officer Brazeal. We disagree.

The following evidence supports the jury's determination that Jackson was the driver:

- The Dodge Journey was stolen on June 11, 2020—two days before Officer Brazeal was struck by it. Video surveillance showed that the person who stole the vehicle was wearing a bright blue-green hat and distinctive shoes. When he was arrested, Jackson asked if he could "get the rest of [his] clothes." Later, a hat and shoes matching those seen on the surveillance footage were found under a vehicle near where Jackson was arrested.

- Jackson admitted that he had stolen the Dodge Journey.

- Jackson was found hiding in a Thunderbird parked at the same house where the Dodge Journey had been discovered shortly after it struck Officer Brazeal.

- The keys to the Dodge Journey were found tucked into a crease in the passenger's seat of the Thunderbird in which Jackson had been hiding.

8

- Both Officer Jaskie, the pilot of the Air One unit, and Jeremy Day, whose vehicle was struck by the Dodge Journey shortly before Officer Brazeal was injured, described the driver of the Dodge Journey as a dark-complected—either black or Hispanic—male. Jackson is a black male.

- Day testified that he saw only one person—the driver—in the Dodge Journey; he did not see any passengers.

- Jackson's DNA was found on the Dodge Journey's gearshift and on items discovered in the vehicle.

- After examining the entire Dodge Journey for fingerprints, the police found Jackson's fingerprints exclusively in the "driver[-]side area."

While none of these individual pieces of evidence, when considered in isolation, is sufficient to prove that Jackson was the driver, their combined and cumulative force when viewed in the light most favorable to the conviction provides a rational basis for the jury's verdict. *See Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015) (instructing that in a legal-sufficiency review, an appellate court should "consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt"); *see also Villa*, 514 S.W.3d at 232 (admonishing that courts "must not engage in a 'divide and conquer' strategy" when conducting a legal-sufficiency review "but must consider the cumulative force of all the evidence"); *cf. Stroud v. State*, No. 09-14-00439-CR, 2016 WL 3136148, at *3 (Tex. App.—Beaumont June 1, 2016, no pet.) (mem. op., not designated for publication) (holding that circumstantial evidence was sufficient to show that appellant was the person who

9

had driven a vehicle found in the mud where appellant (1) had been by himself when he knocked on a door to seek assistance removing his vehicle from the mud and when police arrived to investigate who had been driving, (2) had been at another residence several miles from where the car was found earlier in the evening, and (3) had the key to the vehicle in his pocket); *Hernandez v. State*, 13 S.W.3d 78, 80 (Tex. App.—Texarkana 2000, no pet.) (holding circumstantial evidence sufficient to prove appellant had been driving vehicle when he was the only person walking near wrecked vehicle despite his assertion to investigating officers that he was not the driver and that the driver had run away); *Folk v. State*, 797 S.W.2d 141, 142–44 (Tex. App.—Austin 1990, pet. ref'd) (per curiam) (noting that evidence that the appellant was found alone at the side of the road near a burning vehicle that was registered to his roommate was consistent with the conclusion that the appellant had driven the vehicle).

To support his contention that the State presented insufficient evidence to identify him as the driver of the Dodge Journey, Jackson emphasizes that he does not perfectly fit the descriptions provided by Day and Officer Jaskie—the only two witnesses who observed the driver while he was operating the vehicle or getting in and out of it. For example, Day described the driver as a dark-complected, non-Caucasian man who was between the ages of sixteen and twenty-five, but Jackson was thirty-eight years old at the time of the offense. Further, when Officer Jaskie spotted a vehicle matching the Dodge Journey's description from the Air One helicopter, he

10

described the person he saw exiting and then reentering the vehicle as a "light-skinned black . . . or Hispanic male with blue jean shorts . . . , short hair but not shaved and a dark . . . , short-sleeved shirt." However, when Jackson was arrested, he was wearing full-length blue jeans—not shorts—and while his hair was short on the sides and back, the top of his head was bald.

But these seeming inaccuracies do not render the evidence insufficient to show that Jackson was driving. While Day testified that he got a good look at the driver, he only saw him very briefly through tinted windows after the Dodge Journey contacted his vehicle. Under these circumstances, it is not surprising that Day would be unable to perfectly estimate the driver's age. Further, Detective Rimshas testified that Jackson fit Officer Jaskie's description of a light-skinned black male with short hair, and he explained why Officer Jaskie might have believed that Jackson was wearing jean shorts. Detective Rimshas pointed out that on the surveillance footage depicting Jackson stealing the Dodge Journey, he had one of his pant legs pulled up to the knee. According to Detective Rimshas, if Jackson had been wearing his pants in a similar fashion when Officer Jaskie spotted him from the air, it would appear that he was wearing shorts. It was the jury's role to resolve any discrepancies or inconsistencies in the evidence. *Moore v. State*, 54 S.W.3d 529, 540 (Tex. App.—Fort Worth 2001, pet. ref'd); *cf. Dominguez v. State*, No. 06-98-00293-CR, 1999 WL 641651, at *3 (Tex. App.—Texarkana Aug. 25, 1999, pet. ref'd) (not designated for publication) (holding that "as fact finder, the jury was entitled to conclude that the inconsistencies in the

11

description of [the appellant] on the night of the assault by . . . two witnesses [were] immaterial"). And given the nature of—and the circumstances surrounding—Day's and Officer Jaskie's descriptions as well as the other strong circumstantial evidence that Jackson was driving the Dodge Journey when it struck Officer Brazeal, we conclude that, notwithstanding the descriptions' inclusion of seemingly inaccurate details, a rational factfinder could have found beyond a reasonable doubt that Jackson was the driver. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

Jackson also makes much of the fact that unknown DNA was found on "nearly every item" in the Dodge Journey. He asserts that this unknown DNA indicates that another unknown person had been inside—and in position to drive—the vehicle. But as the State's DNA expert explained at trial, it is impossible to tell how—or when—this unknown DNA was deposited in the vehicle. Thus, the mere presence of unknown DNA does not, in and of itself, suggest that another person besides Jackson was in the vehicle at the time that Officer Brazeal was struck—much less preclude a rational juror from finding beyond a reasonable doubt that Jackson was the driver. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

In sum, viewing the evidence—as we must—in the light most favorable to the verdict, we conclude that its combined and cumulative force and the reasonable inferences that could be drawn therefrom allowed the jury to rationally conclude

beyond a reasonable doubt that Jackson was driving the Dodge Journey when it struck Officer Brazeal. Accordingly, we overrule Jackson's first point.

## C. Sufficient Evidence Shows That Jackson Acted Intentionally or Knowingly

In his second point, Jackson contends that the evidence is insufficient to show that he intentionally or knowingly struck Officer Brazeal. Again, we disagree.

Aggravated assault of a public servant with a deadly weapon is a result-oriented offense. *Johnson v. State*, 271 S.W.3d 756, 761 (Tex. App.—Waco 2008, pet. ref'd); *Hernandez v. State*, No. 05-01-00749-CR, 2002 WL 1164059, at *3 (Tex. App.—Dallas June 4, 2002, no pet.) (not designated for publication) (citing *Peterson v. State*, 836 S.W.2d 760, 765 (Tex. App.—El Paso 1992, pet. ref'd)). Thus, to sustain a conviction, the State was required to prove beyond a reasonable doubt (1) that it was Jackson's conscious objective or desire to injure Officer Brazeal by striking him with a vehicle or (2) that he was aware that his conduct was reasonably certain to cause this result. *See* Tex. Penal Code Ann. § 6.03(a), (b).

As noted, "[i]ntent and knowledge . . . are almost always proven through circumstantial evidence." *Clay*, 389 S.W.3d at 878. Here, the State presented ample circumstantial evidence to support the jury's finding that Jackson acted intentionally or knowingly. First, the State presented evidence that the vehicle had been fully inspected and that no mechanical issues had been found that would have affected Jackson's ability to avoid hitting Officer Brazeal. Second, the State presented testimony from multiple eyewitnesses who stated that Jackson could have avoided

13

colliding with Officer Brazeal but instead deliberately chose to hit him.[2]  For example, Officer Casey testified that "[t]here were a lot of different ways [Jackson] could have gone to avoid hitting" Officer Brazeal.  Several customers at a nearby Harley-Davidson dealership who witnessed the incident agreed.  One such witness stated that Jackson could have stopped but did not, that there were different routes that Jackson could have taken, and that Officer Brazeal had tried to run out of the way.  Another testified that the Dodge Journey drove "towards" Officer Brazeal and "absolutely" did not veer off course; "instead of going straight, it[] follow[ed] the path" of Officer Brazeal as he was running and "start[ed] to turn, to follow him."  A third Harley-Davidson customer told the jury that Jackson had "every opportunity to avoid hitting Officer Brazeal.  He could have gone right and easily avoided him.  There was plenty of open road.  He could have continued down 820.  The lanes were pretty much open.  He could have continued straight, but he deliberately turned and hit Officer Brazeal."

Thus, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that

---

[2]Jackson asserts that the jury "had no need of bystanders' opinions and perceptions" because the offense was captured on Officer Guerrero's in-car camera and on Officer Casey's and Officer Brazeal's body-worn cameras, meaning that the jurors were "able to perceive it for themselves."  But Jackson has not challenged the admissibility of these witnesses' testimony, and it is part of the record.  Thus, it is part of the panoply of evidence that the jury could have considered in assessing whether Jackson acted with the requisite knowledge or intent. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) ("When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper.").

14

Jackson intentionally or knowingly struck Officer Brazeal with the vehicle. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. Accordingly, we overrule Jackson's second point.

### III. CONCLUSION

Having overruled both of Jackson's points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 5, 2025